SOUTHERN UTILITIES COMPANY, a Corporation, *Plaintiff in Error*, v. WILLIAM F. MURDOCK, *Defendant in Error*.

En Banc.

Opinion filed May 14, 1930.

Petition for rehearing denied June 16, 1930.

*Jackson, Dupree & Cone,* for Plaintiff in Error;

*Mabry, Reaves & Carlton,* for Defendant in Error.

ELLIS, J.—William F. Murdock lived with his wife in Manatee, Florida. The house which they occupied was supplied with electrical current for domestic use by the Southern Utilities Company, which operated an electric power plant in Bradenton, Florida, and supplied electric current for lights and power to neighboring towns including the town of Manatee.

About the first of December, 1925, Murdock left his house early in the morning to go to his place of business. He passed through the front door of his house to the porch and thence to the walk way leading to the street, about thirty or forty feet distant, but instead of going by the walk way directly to the street he decided, as was his custom, to go across the yard diagonally to the street to save, as he said "a few steps." He would have thus saved in distance the difference between the length of the hypotenuse of a right

angle triangle and the distance of the other two sides. He had taken a few steps only in the yard when he came in contact with a fallen electric wire of the Utilities Company. The wire was charged with electricity and lay upon the ground. Murdock was severely burned and was very soon afterward discovered in an unconscious condition lying prone upon the ground face up, right hand palm upward on his chest, and the wire lying across his body upon his hand, the broken ends of the wire emitting sparks about eighteen inches from his body.

He brought an action against the Utilities Company for damages for personal injuries alleged to be due to the negligence of the company. The amended declaration was filed in November, 1927, nearly two years after the accident. It contains three counts and is in a form, so far as the second and third counts are involved, which has on more than one occasion been criticised by this Court. See Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, 25 So. R. 338; Nelson v. Hall, 66 Fla. 35, 63 So. R. 156.

The first count alleged that the negligence of the defendant consisted of its having "negligently erected and maintained its wires" so that one of them fell in the yard of the plaintiff in close proximity to his house. The second count alleged that the company's negligence consisted in its neglect "to keep its said wire so insulated as to shield the plaintiff from injury"; the third, that the defendant "suffered the said wire to carry a high and dangerous voltage of electric current."

There was no demurrer to either count of the declaration but three pleas were interposed to each count. The first was a plea of not guilty; the second that the fallen wire was the result of "an act of God" in that during the morning of December 1, 1925, and the preceding night a severe wind storm prevailed in Manatee county, the wind

reaching a high and unusual velocity which placed an unusual and great strain upon the defendant's wire causing it to break loose at a point where it joined the house wiring and such condition could not have been foreseen and guarded against by the defendant. The third and fourth pleas aver that the plaintiff was guilty of a contributory negligence in that although the danger was apparent to him he negligently picked up the fallen wire and thus by his own negligent act brought himself into contact with the fallen wire and the electrical current which it carried.

Later the second plea to the second and third counts was amended so as to aver that a "primary wire carrying 2300 volts had broken and fallen across a secondary or low voltage wire" which caused the "heavy current from the high tension wire to be transmitted to the wire which fell."

The amendments appeared to be clear enough to the parties so they went to trial on the issues joined. The jury returned a verdict of five thousand dollars damages for the plaintiff and judgment was entered for that amount in his favor.

The Utilities Company seeks a reversal of the judgment on writ of error.

A motion for a new trial was denied.

At the conclusion of the plaintiff's evidence the defendant moved for a directed verdict in its behalf and the motion was renewed at the conclusion of all the testimony. These motions were denied and are assigned as errors.

. The case presents merely questions of fact in the main and one question upon the admissibility of certain proposed evidence. The defendant offered the United States Weather Report at Tampa for December 1, 1925. The plaintiff objected and the objection was sustained.

There was no error in that ruling because it appears that neither the record offered showed the velocity of the wind

at Manatee nor could the custodian of the record state from his own reading of the records what the velocity of the wind was nor the meteorological conditions existing at Manatee on the night of November 30th or the morning following, therefore the evidence offered did not support the second plea.

The weather conditions prevailing at Tampa or some other point thirty or forty miles distant constituted only a basis for conjecture merely as to like conditions prevailing at the same time in Manatee. The vicissitudes of season or climate if relied upon as important must be proved by the party seeking an advantage therefrom like other facts. Dixon v. Nicholls, 39 Ill. 372, 89 Am. Dec. 312.

If it were prudent and logically sound to draw the inference sought by the defendant from the evidence offered we doubt its efficacy to support the defense offered by the second plea, because if it were legitimate to infer that the weather conditions prevailing at Tampa also prevailed at the same time in Manatee, the fact would have afforded to the defendant such warning as would have required it in the exercise of reasonable diligence and prudence to guard against such conditions as existed in the defendant's system of wires and in the plaintiff's yard which caused his injury.

The injury occurred early during the morning of December 1st. If the high wind and stormy conditions prevailed during the night previous reasonable prudence and foresight required extraordinary activities which with the aid of modern mechanical devices in the power house of the defendant would have enabled it immediately to detect a leaking wire in contact with the ground in some reasonably definite locality. This phase of the subject was very clearly put by Mr. Justice BUFORD in the case of Davis v. Ivey, 93 Fla. 387, 112 So. R. 264.

As to weather conditions existing in another place to

prove the conditions existing at the place of issue Mr. Wigmore, in his work on evidence, says: "It would be a mistake to attempt to erect these specific rulings into hard and fast precedents; the law should do no more than recognize the general principle leaving it entirely to the trial court to apply it to each case. The steam-hammer of the Supreme Court is not needed to crack such nuts." 1 Wigmore on Evidence, p. 519.

A witness named Wayne Warfield, an electrical engineer by profession and training, was called by the defense and a hypothetical question was asked him which sought information as to which part of the body of the plaintiff first came into contact with the electrically charged wire. Plaintiff objected to the question and the objection was sustained. The ruling is assigned as error.

There was no error in that ruling. It is difficult to perceive the hypothetical character of the question as it was framed. The question assumed the truth of the facts which the evidence tended to support, but that is all that can be said for it as conforming to the requirements of such a question. There could be no relation between the facts as stated in the question and the theory that the plaintiff's right hand first came into contact with the wire in an effort to pick it up from the ground that did not rest upon the merest guess. The judgment of an expert must be more than a guess.

The conclusion sought by the so-called hypothetical question could not be reached by the use of the reasoning faculties. There was no discernible relation between the facts as they were assumed to be established and the conclusion which the examiner sought. It would have been as futile to have asked the witness why in view of all the facts related the wife was not called as a witness. A hypothetical question must contain facts assumed to be proved, stated

in accordance with the theory of the examiner. 5 Ency. Evidence 615.

The witness was by the question propounded to him required to decide if he indeed felt competent to answer that which it was the duty of the jury to determine.

The pleas of contributory negligence we think were not established nor was the plea that the injury or the condition causing it was an act of God which with reasonable prudence and foresight could not have been avoided by the defendant.

We do not deem the inference from the evidence to be unavoidable as counsel contend that the plaintiff through curiosity or some other reason negligently "stooped down and seized the wire in his right hand." Upon the other hand it is just as likely, if not more so, that in hurrying to his work his body or his foot came in contact with the wire which he neither saw nor suspected was on the ground.

We cannot say that error has been made to appear in the trial of the cause, so the judgment is affirmed.

TERRELL, C. J., AND WHITFIELD, STRUM AND BUFORD, J. J., concur.

BROWN, J., concurs in the conclusion.