·PETER ADAM *vs.* UNITED ELECTRIC RAILWAYS COMPANY.
JANUARY 4, 1938.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This action of trespass on the case for neg-ligence is before us solely on the plaintiff's exception to the ruling by the trial justice in the superior court, directing a verdict for the defendant.

The accident in question involves an almost head-on col-lision between an automobile driven by the plaintiff and a bus of the defendant company, about 10 o'clock p. m. on September 17, 1933.   It happened in the town of North

Providence on that part of Charles street close to where it connects with and continues as Louisquisset Pike.

Charles street and its continuation, Louisquisset Pike, hereinafter called the Pike, runs generally north and south. Proceeding in a northerly direction, Charles street has a black or tarvia surface up to the point where it connects with the Pike, which latter is of cement construction. The traveled portion of Charles street at the scene of the accident is 34 to 35 feet wide, and there is a shoulder varying from one to three feet on its westerly side, beyond which there is a hollow or ditch of undetermined character. Gillen street, an unfinished street with no curbs, runs from the east into but does not cross Charles street.

Charles street ends and the Pike begins 196 feet northerly from the center of this street and 218 feet from a trolley pole, numbered 293, which is located on the easterly side of Charles street southerly from Gillen street.

Coming toward Providence, from the point where the Pike ends and Charles street begins, the latter street runs in a generally southwesterly direction. From that point it first runs south for fifty feet and then begins a ten per cent curve to the plaintiff's right in a southwesterly direction. From the Pike the center of that curve is about 120 feet and the curve ends before reaching a point opposite the northerly line of Gillen street. There is also a 4.18 per cent downgrade as Charles street approaches Gillen street. There is some shrubbery on the bank or land westerly of the highway between the beginning and center of the curve; and a billboard, whose nearest or easterly end is 15 feet westerly from the westerly side of Charles street, is located between the center and end of the curve. The transcript contains evidence of many other measurements, estimates of distances, observations of visibility, and other facts tending to support the respective claims of the parties.

The testimony also shows that, prior to the accident in this case, two other automobiles had collided and had come to a stop, locked together, on the easterly half of Charles

street just south of Gillen street, thus obstructing traffic moving in a northerly direction on Charles street. A state trooper stood near the center of Charles street, to the west of and about half way between the interlocked automobiles, from which position he directed traffic by signalling with a strong flashlight.

In general terms, as shown by the transcript before us, the plaintiff's testimony is to the effect that he was driving his automobile, properly lighted, in a southerly direction on his own right or westerly side of the cement of the Pike at 18 to 20 miles an hour; that before or at the time when he was turning to his right, following the curve of Charles street, no signal or warning of any kind was given by any vehicle coming from an opposite direction on his side of the highway; that shortly thereafter he saw the defendant's bus squarely in his path only about 12 feet away; that at that time the bus had passed the two automobiles which obstructed the easterly part of the highway; that he then immediately jammed on his foot brake, and turned to his left, that is the east, since there was not room for him to pass the bus on the extreme westerly side, that is to his right, because of the location of the bus and the ditch, and the closeness of the trolley pole to the road on the westerly side of Charles street. He was unable, he testified, to avoid the accident because of the course taken by the bus in turning to the east at about the same time that he also turned that way to avoid the bus. The plaintiff also testified that he had left the cement highway or Pike and was about to take the curve to his right when he first saw the stalled automobiles on the easterly side of Charles street; that he could not then see the bus because of the brush, bank and billboard on the westerly side of the curve; that he did not diminish his speed or stop before the collision with the bus, and that the bus was fully lighted at the time of the accident.

The bus driver testified, in substance, that he had stopped his northerly bound bus on the east side of Charles street at or near Gillen street, because he saw the greater portion;

if not all, of the easterly part of the highway blocked by the two automobiles which had figured in the previous accident; that the state trooper, who stood in the middle of the road and about half way between those two automobiles, gave him a signal with his flashlight to pass the obstruction by going to the bus driver's left on the westerly part of Charles street, ordinarily used by traffic coming from the opposite direction; that, obeying this order of the state trooper and seeing nothing coming from the north to prevent his doing so, he drove on the westerly side of Charles street; that when he was about half way around the two stalled automobiles, and was going at 7 or 8 miles an hour, he observed the lights on the plaintiff's automobile some 125 or more feet away, which automobile was then coming toward him on the westerly side at an estimated speed of 25 to 30 miles an hour; that when he "got around these two automobiles that was parked across the road," he started to turn to his right toward the easterly side of the highway; that the plaintiff, instead of turning toward his own right or westerly side, turned to his left or easterly side, to which the bus was also turning; that when he, the bus driver, "got within six feet away from him," he blew the horn and stopped the bus because the plaintiff "did not stop at all, he was coming full speed," and the collision occurred immediately thereafter, the front end of the bus then being "right in the middle" of the road.

The bus driver admitted that he gave no warning signal of his approach until he sounded his horn and put on the brake, as the bus was within 6 feet of the plaintiff's automobile. He could not state how far past the stalled automobiles the bus went before starting to turn back to the easterly side, but he did say that after the accident the bus was completely past those automobiles.

The state trooper, who was called as a witness by the plaintiff, did not see the accident nor did he see the plaintiff's car at any time before it happened. He testified from recollection that, when he reached the scene of the accident,

the bus was wholly to the west of the center line of the road and approximately 70 feet to the north of the nearest stalled automobile. This witness, however, later identified and testified from a diagram not drawn to scale but made by him one or two days after the accident from measurements and notes taken by him on the night of the accident. This evidence showed that the front of the defendant's bus stopped about 30 feet past the most northerly part of the two stalled automobiles, and wholly to the west of the center line, but turned diagonally to the northeast.

Upon this evidence generally the trial justice directed a verdict for the defendant. Our examination of the transcript, however, discloses conflicting evidence upon some material issues of fact which properly should have been submitted to the jury for their determination, at least in the first instance.

This court has repeatedly held that, on a motion to direct a verdict for a defendant, all the evidence and reasonable inferences therefrom must be viewed most favorably to the plaintiff, and the trial justice is not at liberty to pass upon the credibility of the witnesses or the weight of the evidence. *Gallo* v. *Simpson Spring Co.*, 55 R. I. 410; *Horaho* v. *Wanelik,* 56 R. I. 193, and cases cited.

We also have held frequently that the question of contributory negligence ordinarily is one of fact to be determined by the jury, unless the evidence is so clear that only one reasonable inference can be drawn therefrom. *Duffy* v. *United Electric Rys. Co.*, 56 R. I. 450; *United Electric Rys. Co.* v. *Pennsylvania Petroleum Products Co.*, 55 R. I. 154, and cases cited.

In the instant case, there is conflicting evidence on the question whether defendant's bus, in passing the stalled automobiles, went to the extreme westerly side of the highway, thereby blocking that lane, or held reasonably close to the stalled automobiles and the center line, leaving room enough for southbound vehicles to pass it on the extreme westerly side of the highway. Likewise, there is dispute as

to how far the bus actually proceeded on the westerly side of the road after it had passed the stalled automobiles; and whether it had started seasonably to turn back to the easterly side after passing them, or had remained on that side longer than would be reasonable, for one in the exercise of care under the existing conditions and circumstances. At least these questions had a bearing upon the alleged negligence of the defendant and were material to the issues involved, if we consider all of the evidence most favorably to the plaintiff.

On the question of the plaintiff's contributory negligence, we cannot say from the transcript before us that only one reasonable inference can be drawn from the testimony of the plaintiff, without passing at the same time upon the credibility of the plaintiff and the truth and value of his testimony.

The question of the plaintiff's contributory negligence apparently depends to a considerable extent on whether his view of the westerly side of the road, as he was making the turn to his right, was obstructed by the billboard, bank or brush to the west of the road so as to prevent his seeing the lighted bus until he was only 12 feet away from it, as he testified; or whether that side of the road and the bus, notwithstanding the alleged partial obstruction to the view, was visible for at least 70 and up to 125 feet, or more, as the testimony for the defendant tends to show. There was also the question of whether the plaintiff was proceeding at 18 to 20 miles per hour, as he testified, or whether he was actually driving at 30 to 35 miles per hour, as the state trooper testified the plaintiff admitted to him after the accident. This disputed testimony involves the credibility of the plaintiff and the other witnesses, which should not concern the trial justice on this motion. *Duffy* v. *United Electric Rys. Co., supra; United Electric Rys. Co.* v. *Pennsylvania Petroleum Products Co., supra.*

The defendant urges before us that its bus driver was not negligent in driving on the left side of the road, and relies

upon the case of *Ribas* v. *Revere Rubber Co.*, 37 R. I. 189. This is especially true, it is claimed, since he proceeded on that part of the road at the direction of a state trooper. The signal of the state trooper to the bus driver, according to the evidence, had undoubtedly given him permission to proceed around the obstruction, but it did not relieve him entirely of the duty of the continuous exercise of reasonable and proper care. *O'Donnell* v. *United Electric Rys. Co.*, 48 R. I. 18, 22. Notwithstanding such permission, the bus driver was required to exercise, as he proceeded, such care as the particular conditions and circumstances reasonably demanded. *Ribas* v. *Revere Rubber Co.*, *supra*, at page 209. Whether he did so in the circumstances, as shown in the evidence here, was an issue of fact to be determined in the first instance by the jury.

We are of the opinion, after an examination of the evidence, that there are issues of fact to be submitted to the jury in the first instance, and that the trial justice erred in granting the defendant's motion for a directed verdict.

The plaintiff's exception to the granting of this motion is sustained, and the case is remitted to the superior court for a new trial.

*Raymond E. Jordan, George A. Panaretos,* for plaintiff.
*Clifford Whipple, Earl A. Sweeney,* for defendant.