62 So.2d 355 (1952)
RODI et al.
v.
FLORIDA GREYHOUND LINES, Inc.
Supreme Court of Florida, en Banc.
December 22, 1952.
Rehearing Denied January 16, 1953.
*356 John R. Parkhill and W.N. Burnside, Tampa, for appellants.
Shackleford, Farrior, Shannon & Stallings, Tampa, for appellee.
ROBERTS, Justice.
This is an appeal from a judgment on a verdict directed in defendant's favor by the trial judge in a personal injuries case instituted by the plaintiff-appellant in the court below, in which the principal issue is whether the trial judge erred in directing such verdict. In determining such question, this court is required to consider the testimony adduced in the cause in the light most favorable to the plaintiff. Conflicts will be disregarded, and every reasonable intendment deducible from the evidence must be indulged in plaintiff's favor. With this rule in mind, we will relate only that portion of the testimony most favorable to the plaintiff, and will not unduly lengthen this opinion by recounting in detail the many inconsistencies and conflicts in the evidence, except as necessary. The parties will be referred to as they were in the court below.
The accident in which plaintiff was injured occurred at about 10 o'clock at night, on the crest of a small hill about 2.4 miles south of the City of Lake Wales. A bus owned by defendant and being driven by its agent on its regular run was proceeding in a northerly direction when its motor stalled. The driver brought the bus to a stop with all four wheels on the pavement at a point about 105 feet short of the crest of the hill on the south, or upgrade, side thereof. The driver then alighted from the bus and proceeded to the rear of the bus, where the engine was located. One of the passengers testified that she heard a tapping at the rear of the bus. No flares or fusees had been put out by the driver at the time of the accident in question, but all the lights on the bus were left burning. There is evidence that as much as five minutes may have elapsed between the time the driver got out of the bus and the time that the accident occurred. The bus driver testified that after the accident he placed the flares at the proper places and that this took him "two or three minutes."
The plaintiff, who was also proceeding in a northerly direction, approached the bus from the rear and was signaled to stop his car by the bus driver. The plaintiff, according to his testimony, then stopped his car in the right-hand lane directly behind the bus and offered his assistance. The driver declined such assistance and signalled the plaintiff to go on around the bus. The plaintiff then turned out into the left-hand lane to go around the bus and had proceeded approximately one-half the length of the bus (which was 35 feet long) when his car was struck by a car driven by one Ward and proceeding in the opposite, or southerly direction. The plaintiff testified that he did not see the lights of the on-coming Ward car; that "the minute I turned the car to the left and then straight, then I was directly in front, and that's when I got hit, just like a flash."
The bus driver testified that he saw the lights of the Ward car, but his testimony is in conflict with that of the plaintiff as to the exact position of the plaintiff's car when the driver directed him to go around the bus. The driver testified that, when the motor failed, "* * * I looked and seen some lights quite a distance off coming from the front of the bus, and I looked and seen a car coming from the back. I walks back to the back of the bus, walks around back and flags that car coming on my side of the road behind me. Then as he pulls up he acknowledges, blinks his lights, and pulls up to about twenty feet of the bus and stops. I starts to go on around the bus to my flare box and he pulls up to the side of me and he asked if he could help me. I told him, `No, fellow. There's not a thing you can do, but you better get out of the road.' Then the crash occurred. The cars  the on-coming car, coming the other way, hit this car there, the one that was stopped in the road."
From the driver's testimony, the implication is that the lights of the car seen by the driver approaching from the front of the bus were those of the Ward *357 car; but another of defendant's witnesses testified that he was expecting to meet one of the passengers on the bus at Lake Wales; that he learned there that the bus was running late, due to engine trouble; that he went out to meet the bus; that he passed the bus after it was stalled on the hill; that the bus driver signalled to him with his flashlight; that he went on past the bus and met the plaintiff's car travelling at a slow rate of speed some 200 or 300 feet behind the bus; that he proceeded about 600 feet on down the road and turned around; that just as he was straightened out good, he heard the crash of the collision of plaintiff's and Ward's cars. This testimony is corroborated by that of a passenger on the bus, who testified that the witness was waiting for her when she got off the bus after the accident, and is significant on the question of whether the bus driver had had time to place a fusee or flares before the accident occurred. It is also sufficient, when considered in connection with other testimony, that it may have been five minutes between the time of the accident and the time when the driver alighted from the bus, to present a jury question as to whether the driver had, in fact, had time to put out the flares, as required by law.
A passenger in the Ward car (Ward did not testify) stated that they were travelling about 45 or 50 miles per hour, and that "As we came over the crest of the hill there was the bus and the other car in the middle of the road. You couldn't tell, to begin with, if the bus was moving or not, right in the split second." He also stated that, after they came over the crest, "We noticed the bus was still and this other car was coming around it and we swerved to miss it and didn't." His explanation for not seeing the lights until they reached the top of the hill was that there was a curve on the side of the hill from which they were approaching.
The defendant offered the testimony of an engineer to the effect that the hill had an average grade of two and one-half percent and that, on such a grade, the headlights of Ward's and the plaintiff's cars should have been visible, each to the other, a distance of 465 feet. The trial judge, in ruling on defendant's motion for a directed verdict, relied entirely on this evidence as an incontrovertible "physical fact," and rejected the testimony of the plaintiff and Ward's passenger respecting the visibility of the other's headlights. He also disregarded the testimony of a highway patrolman, offered by defendant, to the effect that the lights of on-coming cars approaching from the north were visible "just before they came over the crest of the hill," when standing at the point of impact, which was some 122 feet below the crest of the hill.
It was the trial judge's opinion that, since the headlights of Ward's and the plaintiff's cars should have been seen by the other at a distance of 465 feet, Ward was negligent in not having his car under sufficient control to have stopped within that space, and the plaintiff was negligent in that "he couldn't sit there and, like he says he was directed, blindly go on when those headlights were coming right down that road." And, certainly, if the jury as the triers of the facts had absolved the defendant of liability on the basis of the testimony of the engineer and that of the bus driver with respect to the position of the plaintiff's car at the time he directed the plaintiff to proceed around the bus, we would not be inclined to disturb their verdict. But we think the able trial judge failed to take into sufficient account the testimony of the plaintiff that he was completely behind the bus until he pulled out into the left lane of traffic at the direction of the bus driver; and it may reasonably be inferred that the plaintiff actually did not see the lights of Ward's car until after he had placed himself in such a position that he could not extricate himself therefrom.
Similarly, as to Ward's negligence, even if it be assumed that he saw or should have seen the lights of the bus from a distance of 465 feet, this fact did not alert him to any danger; it was not until he saw the headlights of plaintiff's car in addition to those of the bus, that he was *358 put on notice that something was amiss. Thus, if Ward did not see the headlights on plaintiff's car until after he topped the hill (as was testified to by Ward's passenger), then, at most, only 160 feet separated him from the plaintiff's car at the time he first observed it; and this court can take judicial notice from established and widely publicized calculations, that a car travelling at the lawful speed of 50 miles per hour needs 166 feet in which to come to a stop under optimum conditions. Thus, the 122 feet between the crest of the hill and the point of impact was obviously insufficient in which to do so.
Thus, as to both Ward's negligence and the plaintiff's contributory negligence, we do not think it can be said that the evidence requires a finding that all reasonable men in the exercise of an honest and impartial judgment must draw the conclusion that one or both of them did not exercise the highest degree of care commensurate with the circumstances.
Further, in holding that Ward was guilty of an independent intervening act of negligence, the trial judge failed to give sufficient consideration to the effect of the absence of the flares or fusees. As stated in Gies v. Consolidated Freight-ways, Inc., 40 Wash.2d 488, 244 P.2d 248, 249: "The purpose of the statute in requiring a burning fusee, however, is not to merely warn of the presence of vehicles on the highway, but to give notice of the fact that the vehicles are stationary. A moving vehicle and a stationary one call for different actions toward them by a prudent man, and tardy knowledge of a situation may create an emergency. The appellant's display of ordinary lights is not a compliance with the statute. * * * We cannot say, as a matter of law, that the violation of the statute was a cause so remote as not to constitute actionable negligence." (Emphasis is supplied.) Similarly, we cannot say, as a matter of law, that the presence of the flares would have made no difference in the final outcome of this unfortunate occurrence. And, as heretofore noted, it was reasonably deducible from the evidence that the bus driver had had as much as five minutes prior to the accident in which to place the flares; and that he had spent some portion of that time "tapping" on the engine.
The defendant contends, however, that the plaintiff had no right to rely on the bus driver's directions to him to proceed around the bus; that the plaintiff was in an equally good or better position than the driver to ascertain the danger incident to passing the bus, and thereafter voluntarily confronted the certain and obvious danger of being struck by the on-coming car; and that his negligence, as a matter of law, proximately contributed to his injury so as to bar his recovery. This contention cannot be sustained.
As above noted, the plaintiff said he pulled up behind the bus, and that he was behind the bus when directed by the driver to proceed around the bus. The plaintiff also testified that he looked but did not see the lights of the Ward car, and we think a reasonable man might conclude that this was true, considering his position in the rear of the bus, the glow of the bus lights, and the uncertain position of the Ward car. Whether or not the plaintiff was entitled to rely on the signal of the bus driver was, under the circumstances, a question of fact for the jury.
And, certainly, after the plaintiff had pulled out into the left-hand lane of traffic, no negligence can be attributed to him, as a matter of law, in failing to extricate himself from the position in which he found himself as a result of obeying the instructions of the driver. If, as testified to by Ward's passenger, they first saw the headlights of plaintiff's car as they topped the crest of the hill, then at most only 160 feet lay between Ward's car and the plaintiff's car at this point (the front of the bus was 105 feet from the crest of the hill, the bus was 35 feet long, and Ward may have been stopped as much as 20 feet back of the bus), and this is assuming that the plaintiff turned sharply left into that lane of traffic. Since at the rate of 50 miles per hour a vehicle travels *359 73 feet in one second, it is clear that only a few seconds elapsed between the time that plaintiff pulled out into the left lane and the time of the collision; and, as stated in Stone v. Reed, Mo. App., 247 S.W.2d 325, 330: "* * * no reasonable person would expect plaintiff to exercise the cool and accurate judgment of one sitting at a desk with pad and pencil figuring the possibilities based upon distances and rates of speed of the two vehicles in question. Plaintiff was, through the negligence of defendant Reed, put in a position of danger, and we cannot adjudge plaintiff guilty of contributory negligence as a matter of law merely because he did not use the very best judgment under the circumstances."
We recognize the rule, relied upon by defendant, that notwithstanding the fact that he was following the directions of the bus driver, the plaintiff was not relieved entirely of the duty to proceed with such care as the particular conditions and circumstances reasonably demanded; but we think that the circumstances of the instant case require a determination by the trier of the facts of this question.
We hold, then, that the trial judge erred in finding that, notwithstanding the acts of negligence charged to defendant and assuming the truth of such charges, the evidence showed, as a matter of law, that the contributory negligence of the plaintiff or the negligence of Ward, or both, constituted the proximate cause of the accident, thus relegating the negligence of the bus company to the remote cause thereof and relieving the company from liability therefor.
As to the remaining question presented by the plaintiff-appellant, relating to the cost of taking and transcribing certain depositions, it has not been made to appear that the trial judge abused his discretion in charging these costs to the plaintiff; but, since the cause must be remanded for a new trial, the final disposition of this item may await the outcome of the new trial.
For the reasons stated, the judgment appealed from should be and it is hereby reversed and the cause remanded for new trial.
Reversed and remanded.
TERRELL, HOBSON and MATHEWS, JJ., concur.
SEBRING, C.J., THOMAS, J., and FABISINSKI, Associate Justice, dissent.
FABISINSKI, Associate Justice (dissenting).
The plaintiff below (appellant) testified that he stopped on a flashlight signal of the driver of the bus, about 20 feet behind the parked bus, and in the right lane of traffic. The driver was at the rear of the bus, towards the center of the road. The driver, in the language of the plaintiff, "told me to go ahead and motioned with the flashlight for me to go. In the police style, you know (making a motion with his arm)  motioned to go ahead".
It seems to me that the sole proximate cause of the injury of plaintiff insofar as it relates to any negligence of the driver of the bus, was his reliance upon the signal to proceed without satisfying himself that it was safe to do so, independently of the signal.
Even signals by a police officer directing traffic around an obstruction do not relieve operators of automobiles from using their own faculties in proceeding out of their own lane of traffic to the left lane. Adam v. United Electric Railways Co., 59 R.I. 460, 196 A. 251, and cases there cited. And the act of another driver having no authority to act on behalf of the public, certainly should not excuse the failure to exercise due care for one's own safety.
Having the conviction that the testimony of plaintiff himself shows contributory negligence, I think the judgment should be affirmed.
SEBRING, C.J., and THOMAS, J., concur.