ALLEN, Judge.
This is a consolidated appeal from two Final Judgments in two actions at law for negligence, one brought by Arthur B. Story and the other brought by Maude Story, husband and wife. The actions were consolidated for trial below and the judgments were based on verdicts by the jury of $17,-000 to the husband and $45,000 to the wife.
The appellant was defendant below in each of the cases and the two appellees were plaintiffs below. The parties will be referred to herein as they stood before the trial court.
This action resulted from an automobile collision between cars driven by Maude Story and Archie Carroll Crooke, Sr. The plaintiff, Maude Story, stated her action in three counts; the first two alleging simple negligence and the third alleging culpable negligence.
The plaintiff, Arthur B. Story, sued for damages as the husband of Maude Story.
The defendant moved for directed verdicts at the conclusion of plaintiffs’ evidence and at the conclusion of all the evidence. Both motions were denied. Plaintiffs each moved for a directed verdict at the end of all the evidence, which motions were granted.
The defendant filed a motion for the court to set aside the verdicts and grant a directed verdict to defendant in each case or in the alternative, to grant a new trial. These motions were denied.
The appellant contends that the court directed a verdict for the plaintiff, Maude Story, on all three counts of her complaint, which included the count upon which she based her request for punitive damages. It is also contended by the appellant that the effect of the court’s charges was to authorize the jury to include in its verdict punitive damages for Arthur B. Story, even *345 though Arthur B. Story did not claim such damages in his complaint.
The questions considered by this Court are first, was plaintiffs’ evidence as to culpable negligence of such conclusive force that the lower court was justified in directing a verdict for punitive damages and second, does the record reflect that the lower court improperly instructed the jury that they could consider punitive damages for the husband in reaching the amount of their verdict in his action?
The attorney for the plaintiffs in his argument to the jury (T. 485) said:
“ * * * Now, this is an element of damage, that I am saving for last. It applies to both cases, I saved it till last, because of that fact. The Court will instruct you to the meaning of punitive damages. After all Counsel are through talking. To me it means this, and I believe this is a fair statement of it. Where a person starts a chain of ■circumstances that leads to a motion, somethings (sic) that leads to a set of •circumstances or may lead to that and when those circumstances finally arrive, then that situation is so dangerous that it is beyond human control to escape, hurting other people and damaging their property.”
The attorney then argues for several •pages as to the effects of punitive damages -and concludes with the following on page •490 of the record:
“ * * * I Say this in considering punitive damages and they are for you to consider in the sizable award that’s been determined by the Court. You determine the amount, unless it is a ■substantical (sic) amount, then you have failed to do the thing that punitive •damages call for to make the example. If it’s not an example, then the whole •thing is lost, so your verdict, that part that you include in punitive damages, 'because of the entire settlement set up •why the damages are awarded of their own nature they call for a very substantial amount of money. Gentlemen, I believe at this time that is all I have to say.”
The Court on page 474 of Vol. 3 of the Transcript said:
“* * * Gentlemen of the Jury, in your absence Plaintiffs interposed a motion for a directed verdict in their favor in each of the two cases, which were considered. That motion has been granted by the Court, which means that you are to find for the Plaintiffs in both cases, leaving to you from the evidence the question of the amount of damages to be accessed (sic) by you in each case and to that subject the attorneys for the respective parties will direct their arguments, after which the Court will undertake to charge you what the law is.”
The Judge in his charge to the jury on page 502 of the Transcript said:
“* * * Both of the instructions that I am giving are applicable in each ease. There are some instructions that I will designate going to one case and some going to the other. I will advise you those as I give them. Unless I tell you differently, these instructions go to both cases.”
The Court, following the above quoted matter, proceeded to instruct the jury generally as to various elements that go to make up allowable damages in negligence actions. The Court then stated, on page 505 of the Transcript:
“* * * You may also take into consideration the pain and suffering which the plaintiff has undergone, if any, and which you believe from the evidence she is reasonably certain to undergo in the future in arriving at a verdict for the plaintiff, Maude Story. It will then be your duty to assess her damages. In so doing you are entitled to take into consideration the physical pain and suffering which she en *346 dured as a result of her injury and the mental pain and anguish, if any, that she has endured as a result thereof, as well as any personal inconvenience which she sustained by reason of any incapacity resulting from the injury. You are further instructed that personal injury, physical pain and suffering, mental pain and anguish, cannot be measured by any standard or pecuniary value and the law makes it the peculiar province of the jury to ascertain the amount of damages to be awarded therefor. The Court instructs the jury that punitive damages can be allowed in cases of negligence where the negligence is of a gross and flagrant character evincing reckless disregard of human life or the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise a presumption of a conscience (sic) indifference to consequences or which shows a wantonness or recklessness of a grossly careless disregard of safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of it. Exemplary or punitive damages are to protect the interest of society and the aggrieved individual, not only recompense to the sufferer but also a punishment to the offender and and an example for the community.
“The charges I am about to read here now are peculiarly applicable in the case of Maude Story. * * *”
In view of the Court’s instructions to the jury generally with reference to punitive damages and considering the argument of counsel for the plaintiffs to the jury as to punitive damages in both cases, this Court must conclude that the jury, in considering damages in both cases, was led to believe that punitive damages could be included in their verdict for Arthur B. Story.
This Court has read the record in this case and concludes that the most favorable testimony of the plaintiffs as to culpable negligence was the conclusion of one of their witnesses that the driving of a towed car was dangerous and, in effect, a dangerous instrumentality, and that the plaintiff’s automobile was struck by the car of the defendant on the wrong side of the road. If this was evidence of culpable negligence, there was sufficient evidence adduced by the defendant that the practice of transporting automobiles by driving a car towing another car was common among car dealers, and that whether or not such method of doing business presented a special hazard depended upon the experience of the operator handling that type of set-up (see Appendix — Defendant page 87) to require that the issue of culpable negligence go to the jury for determination.
The plaintiffs offered H. N. Kirkman, Director of the State Department of Public Safety, as an expert witness. Colonel Kirkman testified that he had headed the Department for some 10 or more years and that through his Department he had made various studies relative to traffic conditions and safety on the highways of Florida. He was asked if he could give statistics on the frequency of towed vehicle collisions in the State. The plaintiffs’ counsel asked this question:
“Q. You may answer the question. I believe you said you had a ratio ? A. These are F. H. P., Florida Highway Patrol investigations only. Our reporting is not complete from other law enforcement agencies. During the first 5 months of this year, Florida Highway Patrol investigated 6,787 accidents statewide. Of that number, towing another vehicle involved 34 of those accidents. Percentage wise, that’s Y2 of 1% of those wrecks investigated by this department.
“Q. Now, you probably, or do you have any statistics on how many total wrecks, I mean total vehicles on the road are towed vehicles? A. No we *347 do not. There is no way of compiling this data.
“Q. Now, Colonel, I want to ask you. I’ll ask you the question formerly asked you, which was objective and the objection was overruled. The Reporter took it down and I’ll ask him to read it to you at this time. Is such a towbar arrangement as you have seen in the photographs and where by the car shown in Exhibit Number Six would be hooked to a Chevrolet Sedan for use, for towing on the highways of the State of Florida, there being no one in the car being towed, in your opinion, is such a combination towed dn that manner safe to be operated on the highways of the state of Florida? A. No, in our opinion, no.
“Q. Now, Colonel, in your opinion is such a combination as described in the preceding question a dangerous instrumentality on the highways of the State of Florida? A. Definitely yes.”
The questions put to the witness by plaintiffs’ counsel were objected to by the defendant and the objections were overruled by the trial judge.
Colonel Kirkman testified that he had no personal knowledge of the use of the type of vehicle under discussion (Appendix, Appellant p. 53) and his knowledge was based on a study of his records, which studies were those get forth in the above quoted matter.
We are of the opinion that the court committed prejudicial error in permitting the witness so to testify and to give the opinions given in this case.
Several other matters were assigned as errors by the appellant, but in view of the fact that the lower court must be reversed for overruling the defendant’s motions for new trials, we will not pass on said assignments.
The judgment of the lower court is reversed in each of the two cases and is instructed to grant new trials to the defendant.
KANNER, C. J., and PLEUS, J., concur.