REED, Judge.
The appellant in this case, Hazel J. Jones, filed suit in the Circuit Court for Brevard County, Florida, against the defendants, Philip Francis Hoffman, Jr., and, Pav-A-Way Corporation for the wrongful death of her husband. In her capacity as administratrix of her husband’s estate she filed a separate action against the defendants for damages to the estate of her deceased husband arising out of his death and for his pain and suffering prior to death. The two actions were consolidated for trial. Each of the complaints alleged that on or about 24 May 1967 the plaintiff’s husband while driving south on State Road 5 (U. S. 1) was involved in a collision with a Mack dump truck negligently operated by the defendant Philip Francis Hoffman, Jr., and owned by the defendant Pav-A-Way Corporation. The accident was alleged to have occurred three miles north of the City of Eau Gallie, Florida, at approximately 8:10 *77 in the morning. The answers denied negligence and alleged contributory negligence of the plaintiff’s decedent. The cause was tried on 19 May 1969 before a jury. At the close of the plaintiff’s evidence a verdict was directed for the defendants and a final judgment was rendered.
The sole issue for review is whether or not the trial judge erred in granting the defendants’ motion for directed verdict.
The highway patrolman who investigated the accident described the defendant’s truck as a big dump truck with tandem rear axles and a fifteen yard capacity. A photograph in evidence shows the truck to have three rear axles and double tires on each side of the axle.
The vehicle in which the plaintiff’s decedent was riding, a Karman Ghia, came to rest in the westerly southbound lane of U. S. 1 seventy to seventy-five feet south of the intersection of U. S. 1 and South Wick-ham Road Extension according to the patrolman. South Wickham Road Extension enters U. S. 1 from the west. South Wick-ham Road Extension is shown by a photograph in evidence to intersect U. S. 1 at approximately a sixty degree angle measured counter-clockwise from U. S. 1. At that point, U. S. 1 has two southbound lanes and two northbound lanes separated by a grass median. The speed limit in the area according to the patrolman was sixty-five miles an hour, and there was a stop sign on South Wickham Road Extension for vehicles entering U. S. 1 from South Wickham Road.
The investigating officer testified that he saw scuff marks on the road (U. S. 1) which led to the Karman Ghia. These marks were fifty-five feet south of the intersection of U. S. 1 and South Wickham Road. The officer saw no skid marks behind the Karman Ghia, but the scuff marks ran slightly to the left or southeast.
The patrolman testified that he walked north from the intersection about 200 feet at which point he said a south bound driver should have been able to see a truck at the intersection of South Wickham Road and U. S. 1. According to the patrolman the visibility from South Wickham Road north along U. S. 1 was also good and the seat of the Mack truck was about nine feet high.
The only other witness for the plaintiff whose testimony is reported is a Mr. W. G. Groover, a purported eye witness. He stated that at the time of the accident he was driving north on U. S. 1 approximately a quarter of a mile south of the scene. He stated that he first saw the truck when it was on South Wickham Road at its intersection with U. S. 1.. He saw the truck enter U. S. 1 and turn south. As the truck turned, it crossed partially into the easterly southbound lane. As the truck came back into the westerly southbound lane, the Karman Ghia hit the truck from the rear. Mr. Groover also stated that he saw two other vehicles, a Mustang and a Corvette, approaching from the north. He indicated that the Corvette was to the east and rear of the Karman Ghia, but the location of the Mustang is not clear from his testimony. The Corvette was, according to Mr. Groover, passing the Karman Ghia just prior to the accident. The Karman Ghia appeared to Mr. Groover to veer to its left just prior to the accident and then straighten up as the accident occurred.
Mr. Groover testified that the Karman Ghia was going sixty to sixty-five miles an hour and the Corvette sixty-five to seventy miles per hour. Mr. Groover said that the truck, once on the highway, moved very slowly. Mr. Groover estimated that from the time the truck entered U. S. 1 until the impact three to four seconds elapsed.
After the accident the Corvette, according to Mr. Groover, stopped approximately even with the left side of the truck and the Mustang skidded off to the right hand side of the road. Mr. Groover stated at one point that the Karman Ghia was approximately 500 feet from the truck when the truck entered the intersection, but admits that in his deposition he had given testimony that the Karman Ghia was approximately 1,000 feet from the intersection at *78 that time. Mr. Groover also testified that his estimates as to distance were just guesses.
In passing on a motion for directed verdict the trial court must accept as true all of the evidence and reasonable inferences therefrom which tend to support the position of the party moved against. Yarbrough v. Ball U-Drive System, Inc., Fla.1950, 48 So.2d 82. As a corollary, the trial court must disregard the conflicts in the evidence, Rodi v. Florida Greyhound Lines, Inc., Fla.1952, 62 So.2d 355, or resolve the conflicts in favor of the party moved against, Winn-Dixie Stores, Inc. v. Miller, Fla.App.1969, 220 So.2d 680. When the evidence thus viewed is such that reasonable men could fairly reach different conclusions thereon as to the ultimate facts on which liability depends, the case should be submitted to a jury. Stirling v. Sapp, Fla.1969, 229 So.2d 850.
In the present case there were conflicts in the testimony, but disregarding these, the evidence and the reasonable inferences which tend to support the plaintiff indicate that the defendant truck driver saw or readily could have seen the plaintiff’s decedent approaching the intersection from the north at a speed of approximately sixty to sixty-five miles an hour. The defendant truck driver pulled out onto the highway and into the southbound lane occupied by plaintiff’s decedent when the plaintiff’s decedent was approximately 209 feet north of the intersection.[1] The plaintiff’s decedent was unable to go around the truck because of an adjacent vehicle to the east. When the evidence is thus viewed, it is our opinion that reasonable men could differ thereon as to the ultimate facts of negligence, contributory negligence, and proximate cause. We, therefore, conclude that the issues thereon should have been submitted to the jury.
We have not overlooked the appellees’ contention that the plaintiff’s own witness testified that the plaintiff’s decedent was 500 to 1,000 feet north of the intersection when the defendant truck driver pulled onto U. S. 1 and the appellee’s conclusion based on that testimony that the plaintiff’s decedent had ample time within which to stop. This testimony relied on so heavily by the appellees was expressly stated by the witness to have been an estimate. The witness’ position south of the point of accident was such as to have made the estimate a difficult one to formulate with any degree of accuracy. For purposes of the motion for directed verdict, the estimate certainly could not be accepted as an established fact.
The judgment appealed is reversed and the cause remanded for a new trial.
Reversed and remanded.
CROSS, C. J., and MacMILLAN, HUGH, Associate Judge, concur.

. The Florida Highway Patrolman gave testimony as to the presence of markings on the road from which it could be inferred that the impact occurred fifty-five feet south of the South Wickham Road intersection. Mr. Groover testified that the plaintiff’s decedent was traveling eighty-eight feet per second (60 m. p. h.) and that from the time the defendant’s truck entered U. S. 1 to the time of impact was three seconds. From this testimony the jury could have concluded mathematically that the plaintiff’s decedent was 209 feet north of the intersection at the time the defendant’s truck pulled onto U. S. 1 (Total distance traveled by the plaintiff’s decedent from the time the defendant’s truck arrived on U. S. 1 was eighty-eight feet per second times three seconds or 264 feet. Fifty-five feet of this was south of the intersection ; therefore, the distance traveled from the north to the intersection by plaintiff’s decedent was 264 feet minus 55 feet, or 209 feet, assuming no deceleration by the plaintiff’s decedent.)