113 So.2d 390 (1959)
Daniel J. LE FEVRE, Appellant,
v.
Anne Rebecca BEAR, Appellee.
No. 793.
District Court of Appeal of Florida. Second District.
June 17, 1959.
Rehearing Denied July 24, 1959.
*391 Wm. McHardy Berson, of Baker, Berson, Lilley & Baker, Orlando, for appellant.
Geo. A. Speer, Jr., Sanford, for appellee.
STURGIS, WALLACE E., Associate Judge.
The appellant, Daniel J. LeFevre, defendant below, seeks reversal of a final judgment in favor of Anne Rebecca Bear, the appellee, plaintiff below, for the accidental and allegedly wrongful death of her husband, John H. Bear, a Commander in the Naval Service, while riding as a guest in an automobile operated by the defendant.
Error is assigned, inter alia, to the denial of defendant's motion to dismiss the several counts of the complaint for failure to state a cause of action under the Guest Statute (F.S. § 320.59, F.S.A.).
The first count charges defendant with gross negligence on the premise that while operating the automobile in the night on a paved two-way highway near an intersection, and while traveling at "a high rate of speed," he carelessly and negligently and without excuse or reason ran off the paved highway. It is obvious that this count charges nothing more than ordinary negligence, and it was prejudicial error to permit the case to go to the jury on the issue raised thereby.
*392 The second, third and fourth counts each charge that defendant was familiar with the curve on which the accident occurred and that he approached and entered into it at "such a high rate of speed" that he knew or should have known he could not negotiate it "safely". The term "such a high rate of speed" as used in these counts must be equated with the other facts alleged  night travel on a curve near an intersection and familiarity with the highway. When thus analyzed it is clearly distinguishable from an allegation which charges nothing more than operation of the automobile "at a high rate of speed," which has been characterized as a relative term. Koger v. Hollahan, 144 Fla. 779, 198 So. 685, 688, 131 A.L.R. 886. Moreover, the word "safely" as used in this context is the equivalent of charging that defendant knew or should have known that the safety of his passenger was thereby put in great danger. One who is familiar with a curve on a highway and drives his automobile into it at such a high rate of speed that he knew or should have known that he could not safely negotiate the curve is guilty of gross negligence. We conclude, therefore, that the motion to dismiss was properly denied as to these counts.
The subject of the quantity and time of indulgence by defendant and Commander Bear in drinking intoxicants was injected into the trial at considerable length over objection of the defendant. The complaint does not charge and the evidence does not show that defendant's indulgence in intoxicants affected his conduct or proximately contributed to the accident. Such evidence could have no effect other than to open the minds of the jurors to improper speculative excursions outside the issues developed by the pleadings and proofs. It is inevitable that many immaterial facts are developed on the trial of any cause. Harmful error does not result unless such evidence is pursued to the point that it is calculated to unduly excite the passions and prejudices of the jurors. Trial courts should exercise the utmost caution to prevent that result.
In an effort to establish the speed of defendant's automobile at the time of the accident plaintiff produced as a witness one Howard Hanson, a Commander in the Naval Service, who was permitted to qualify as an expert. Over defendant's objections, this witness identified and there was admitted in evidence an exhibit prepared by him which sets forth a mathematical "formula for computing the velocity of a projectile at instant of launch when only the angle of launch and the horizontal distance to impact point are known," which formula "neglects the effect of air resistance and is based on the assumption that the launch and impact points lie in the same horizontal plane." The exhibit also sets forth the details of a calculation based on an application of the formula to certain presumed facts (hereafter discussed), by which the result "55 miles per hour" is determined to have been the speed of the automobile involved in this suit at the instant of launch from an assumed point in the course of its forward movement after it left the paved portion of the highway. The calculation also assumes another point in the line of forward movement where the automobile after being launched next made contact with the earth. In making these calculations, Commander Hanson, who first visited the scene two days after the accident, assumed as correct the location of the critical point of launch, the pathway leading thereto as evidenced by wheel ruts, and the point of contact after launch, as identified to him by one who had made an earlier visit to the scene and checked out the path of the automobile. Commander Hanson testified that at this remote time he conceived the idea of calculating the speed of the automobile at what he understood to be the point of launch by applying the mentioned formula, the answer to which, according to his initial testimony, depended entirely on two factors, viz.: the angle of the rut made by the automobile at the point where it appeared *393 to have left the horizontal plane of the earth, and the distance between that point and the point where it re-entered the earth plane. He then made measurements of the angle of the rut which he found to be 3° 47', and of the distance between the points, which he found to be 27 feet. On these measurements and factors he said:
"An object traveling up an incline to the angle that I measured and thereafter traveling 27 feet before impacting the horizontal would have had to have been traveling at least 55 miles per hour in order to reach the 27 feet of distance."
On cross-examination Commander Hanson freely admitted this was his first experience in computing such problems in connection with automobiles.
The defendant called as a rebuttal witness Dr. Dan Anderson Thomas, holder of a Ph.D. in Physics, a professor at Rollins College, who also qualified as an expert. He testified that the exhibit prepared by Commander Hanson produced the only result that could be reached from the figures used and the assumptions indulged and factors employed. He further testified that the figures used and result reached were based on the assumption that one was dealing with a single particle or with a body that behaves like a single particle, and that if parts of the automobile in question were moving at different velocities at the point of launch, it cannot be considered as such a particle or body; that one cannot assume that the angle in a tire track would be the angle of take-off of the center of the mass; that bouncing, producing different velocities of parts of the body, would affect it; that it would not "take off without upward force" and that such force would affect the center of gravity; that under the facts considered the angle of take-off could have been 45 degrees, in which event the speed would be 20 miles per hour; and that what an automobile would do under particular circumstances might be determined by experimentation but not theoretically. He testified that for complicated bodies like an automobile there is a mathematical theorem by which if the angle and velocity of take-off and the center of gravity of the automobile are known, the range of trajectory is computable. Conversely, from any two factors the third is computable.
On being recalled, Commander Hanson candidly testified:
"There are many variables that enter into a computation such as this, and I do agree with the doctor that unless you know the actual launch angle of the center of gravity you can't accurately compute a distance in the fashion I did it."
And on further re-cross-examination:
"Q. But you do have to consider the springs and the whole construction of an automobile for that matter including the tires, whether it is in one piece or not, what its construction is? A. Yes, if you were going to attempt to locate the exact path that the center of gravity took this would be an extremely complicated thing. I don't think you could reconstruct.
"Q. You couldn't really tell where the center of gravity was? A. No. sir.
"Q. Certainly you are not claiming to be qualified to tell where the center of gravity was? A. I make no claim in that respect."
It is a general rule that an opinion is worth no more than the reasons on which it is based. Paxton v. Alameda Co., 1953, 119 Cal. App.2d 393, 259 P.2d 934, 942. The admissions of witness Hanson in regard to the omission of factors essential to an accurate calculation of the character attempted by him, coupled with the highly speculative nature of the facts upon which he arrived at the limited factors actually used by him in producing an estimate of minimum speed rendered his testimony *394 doubly valueless and prejudicial, and the trial court erred in denying defendant's motion to strike the testimony of this witness.
Appellant also contends that the evidence is wholly insufficient to support the verdict and that certain charges were improperly given, citing the leading case of Orme v. Burr, 157 Fla. 378, 25 So.2d 870; 165 A.L.R. 1425. It may be that in view of our holding as to Commander Hanson's testimony plaintiff will be unable to prove a case on a retrial of this cause, but such is a matter for future determination. The facts in this case are strikingly similar to those in the Orme case, and the rules of law there enunciated by the excellent opinion of Mr. Justice Brown continue to apply.
Reversed and remanded for a new trial.
KANNER, C.J., and SHANNON, J., concur.