292 So.2d 437 (1974)
Ray G. BEHM and Frances K. Behm, Appellants,
v.
DIVISION OF ADMINISTRATION, STATE of Florida, DEPARTMENT OF TRANSPORTATION, and Reno Orlando, et al., Appellees.
No. 72-77.
District Court of Appeal of Florida, Fourth District.
March 29, 1974.
*438 James J. Richardson and Robert D. Canada, Henderson, Richardson, Canada, Henry, Buchanan & Munroe, Tallahassee, for appellants.
Geoffrey B. Dobson and Barbara Ann Dell McPherson, Tallahasssee, for appellees.
WALDEN, Judge.
We dismissed this appeal. The Supreme Court of Florida ordered its reinstatement and a consideration on the merits. Behm v. Division of Admin., State Dept. of Transp., 288 So.2d 476 (Fla. 1974). We comply.
This is an eminent domain case.
What is the weight and significance to be given to the uncontradicted opinion of an expert witness?
The trial court issue was the amount of business damages suffered by the appellant-property owners. Their expert opined that it was $19,175.00. The appellee-condemning authority offered no evidence. The jury awarded $9,500.00. The property owners are aggrieved. They say that under these circumstances it was obligatory for the trial court to grant them damages in the sum of $19,175.00 as a matter of law. We disagree and affirm.
The owners of a hardward store claim business damages because the taking prevented the display of sales merchandise outside the building out in front of the store. The property owner's expert witness testified that in order to cure the lack of display space it would be necessary as a substitute for the store to advertise in some way somewhere to the tune of $100 to $150 per month. More specifically, he testified:
"A I started an investigation, and what I did is I went to other hardware stores, Singer Hardware, Park Center Hardware, Sewell Hardware, Mower and Engine Repair, Hall Hardware, Ace Hardware, and asked them what they throught (sic) this area in front of their store where they put their merchandise was worth to them.
"Q Mr. Holden, please don't testify as to what they told you. Now, did you find that they characteristically put items out front of the same nature that we have here?
"A They use it exactly the same and the first thing any one of these *439 stores did was put their merchandise out in the morning because that to them was their most valuable asset and the best way of displaying their merchandise for sale.
"Q Based on your investigation did you arrive at an opinion of what this is worth as advertising to a business, this area in front where you display your wares?
"A On acquiring these facts from these different people, they estimated that to take up the loss, if they lost that area, they would have to advertise $100 to $150 a month some place to regain what they are losing in that advertising space and this was what my investigation showed.
"So that I decided then I would use the in between figure of $125 a month, which is what a person would pay then for advertisement they had in front of their store.
"Q In connection with this did you make an examination of Mr. Behm's advertising, did you see some of the bills, what he ordinarily spends for advertising?
"A I did. I then took the $125 which they would spend per month, multiplied it by 12 and arrived at $1,500 a year, which would be an additional advertising campaign that they would, one would put on, due to the lack of that space he had.

"Taking that amount for 25 years at 6 per cent, which gave me a figure of 12,783, that's what it would be worth if someone handed it to you today, it gave me $19,175.
"That $19,175 is estimated business loss due to this loss in advertising space. To show you what I mean, if someone was given $1,500 a year for 25 years they would arrive at $37,500. But you would have to wait the 25 years to get all that money, so this is what we would do to find out what it's worth if it was given to you today." (Emphasis supplied.)
In summary, the witness picked the figure of $125 per month, based on what somebody told him, multiplied it by 12 to reach the yearly figure of $1,500. He then multiplied this yearly figure by 25 years to reach a total of $37,500, which he reduced to a present value of $19,175. Thus, the witness in his tenuous equation necessarily relied upon the premise that the building had yet a life of 25 years. It is not shown where or how he obtained this critical ingredient of 25 years to structure his hypothetical workup. But this overlooks other testimony adduced. Furthermore, the witness himself, and properly so, termed the fruit of his calculations as being only an estimate.
The jury was entitled to believe from other testimony that the building was already 30 years of age and that such buildings generally have a 40 year life. Thus, the jury would have been entitled to surmise that the building had a lesser life expectancy than 25 years (down to 10) and thereby the actual jury award could be justified. Another uncertain factor is the monthly sum of $125 arbitrarily selected by the expert. Surely the jury could have used that figure or $100 or $150, or some other sum in between as did the witness.
As the appellee suggests with reference to the allowable possibilities, the present worth of business loss could have been in the following range:
"(A) The present worth of $1,200 a year ($100 a month) for ten years would be approximately $8,832.
"(B) The present worth of $1,500 a year ($125 a month) for ten years would be approximately $11,040.
"(C) The present worth of $1,800 a year ($150 a month) for ten years would be approximately $13,248."
*440 And so, without particular reference to the law, the bare testimony reveals that in fact there was a reasonable basis in the record for the jury award of $9,500.
But what is the law?
Appellants cite Sallas v. State Road Department, 220 So.2d 378 (1st D.C.A.Fla. 1969); Garvin v. State Road Department, 149 So.2d 869 (1st D.C.A.Fla. 1963) and Meyers v. City of Daytona Beach, 158 Fla. 859, 30 So.2d 354 (1947), in support of their appeal. The Sallas court indicated that the verdict should be within the range of evidence adduced at the trial, and consist of an amount "not lower than the lowest nor higher than the highest figure supported by the evidence." Garvin and Meyers likewise stand for the proposition that the verdict must fall somewhere in between the high dollar figure found in the opinion of the property owners' expert witness and the lower dollar figure found in the opinion of the condemning authority's expert witness. And, indeed, we perceive no fault or infirmity in these cases. When the condemnor on its own motion and option produces a witness who says that the damages, in his opinion, are in a stated amount, then surely this is a confession that the damages are at least in this sum and the jury should be required to use this figure as establishing the minimum amount of the award. Furthermore, the condemnor would be estopped to urge otherwise.
Appellants likewise cite Jacksonville v. Yerkes, 282 So.2d 645 (1st D.C.A.Fla. 1973). This case is in direct disagreement and conflict with the instant decision. We regret this. However, our research and analysis leave us convinced that the Jacksonville view and result is unsupportable. We would point out that the court in Jacksonville cited to Garris v. Robeison, 146 So.2d 388 (2d D.C.A.Fla. 1962) in support of its contention. Garris, however, concerns a personal injury action, in which a directed verdict was had because there was no rebuttal evidence to plaintiff's case. Garris did not in any way concern unrebutted expert testimony. Therefore, we do not believe that Garris is a precedent for the Jacksonville holding.
The question remains whether the jury and trial judge were obliged to adopt appellants' expert witness' testimony of $19,175 because no money valuation of severance loss was given by appellee. The answer is decisively "no." The appellants' expert testimony was a maximum amount requested, not a minimum amount admitted. There is no admission factor in the appellants' evidence, and it is well established that the trier of fact may accept statements of opinion or reject them in its discretion. The jury is not required to look at them as more than a guide in arriving at its conclusion. Seaboard Surety Co. v. First Nat'l Bank of Montgomery, 263 F.2d 868 (5th Cir.1959):
"The plaintiff did not produce any counter-expert. The jurors were not, however, bound to accept the opinion of defendant's expert witnesses, but had a right to use their own common sense and experience and to draw all reasonable inferences from the physical facts and occurrences." Id. at 871;
Elston v. York, 77 So.2d 856 (Fla. 1955); Evors v. Bryan, 77 Fla. 399, 81 So. 513 (1919); Hawkins v. Schofman, 204 So.2d 336 (3rd D.C.A.Fla. 1967); LeFevre v. Bear, 113 So.2d 390 (2d D.C.A.Fla. 1959); Robertson v. Robertson, 106 So.2d 590 (2d D.C.A.Fla. 1958).
By analogy, there are a host of cases which plainly state that the opinion of an expert witness testifying as to attorneys fees is persuasive but not binding upon the court in determining those fees. Baruch v. Giblen, 122 Fla. 59, 164 So. 831 (1935); Campbell v. Campbell, 220 So.2d 920 (4th D.C.A.Fla. 1969); Breitbart v. State Road Dept. of Fla., 116 So.2d 458 (3rd D.C.A.Fla. 1959); Fekany v. State Road Dept., 115 So.2d 418 (2d D.C.A.Fla. 1959); Folmar v. Davis, 108 So.2d 772 (3rd D.C.A.Fla. 1959); Romy v. Dade County, 114 So.2d 8 *441 (3rd D.C.A.Fla. 1959); Robertson v. Robertson, supra.
Although expert witness testimony is persuasive, the trier of fact may apply to his knowledge and experience, and to other evidence in the trial, when weighing the evidence. Mills v. Redwing Carriers, Inc., 127 So.2d 453 (2d D.C.A.Fla. 1961), see S. Gard, Florida Evidence 365 (1967). As the appellee had produced evidence of a shorter life span for the subject building, the jury may properly have reduced the severance damages in accord with that evidence. The opinion of an expert is worth no more than the reasons on which it is based. LeFevre v. Bear, supra. Further, if the facts upon which the expert witness bases his hypotheses or theory are not proved the opinion answer of the expert necessarily fails with the hypothesis. Gifford v. Galaxie Homes of Tampa, Inc., 223 So.2d 108 (2d D.C.A.Fla. 1969); see Mutual Ben. Health and Accident Ass'n v. Bunting, 133 Fla. 646, 183 So. 321 (1938).
The adoption of a rule contra to the views herein expressed would work basic injustices and unduly restrict and bind the fact finding function. As experienced triers know, there are experts with differing degrees of qualifications and subjects who lend themselves in varying degrees to the employment of opinion testimony. Some experts, although able to recite at least enough background and experience to mount the witness stand and give voice to their hypothesis and end opinion, are unworthy of belief, their opinions being against every understanding of common sense and everyday experience. It would be unthinkable to tell a trial court that, faced with this circumstance, it would have no alternative but to adopt as an established fact the opinion of such a witness when the other side failed to counter it with another expert.
Supposing, further, that the subject is borderline as concerns the proper use of expert testimony. One side produces an expert, the other doesn't, just as a matter of choice. The contra rule would mean that one side would necessarily default the issue to the expert's opinion when, indeed such opinion contributed little, if anything to the ultimate proofs.
And so we conclude that the proper rule, and the rule followed by the trial court, is that the opinion of an expert witness, even though not contradicted by another expert, is not necessarily binding.
We affirm the appealed judgment.
Affirmed.
CROSS and MAGER, JJ., concur.