336 So.2d 579 (1976)
Ray G. BEHM and Frances K. Behm, Petitioners,
v.
DIVISION OF ADMINISTRATION, STATE of Florida DEPARTMENT OF TRANSPORTATION, Respondent.
No. 45431.
Supreme Court of Florida.
July 8, 1976.
Rehearing Denied September 21, 1976.
*580 James J. Richardson, of Henderson, Richardson, Henry, Buchanan, Munroe & Rodman, Tallahassee, for petitioners.
Geoffrey B. Dobson, Tallahassee, Barbara Dell McPherson, Jacksonville, and Winifred Sheridan Smallwood, Tallahassee, for respondent.
OVERTON, Chief Justice.
This cause is before the Court upon petition for writ of certiorari to review the decision of the Fourth District Court of Appeal reported at 292 So.2d 437 (Fla.4th DCA 1974). The decision sought to be reviewed acknowledges direct conflict with City of Jacksonville v. Yerkes, 282 So.2d 645 (Fla.1st DCA 1973), cert. den. 291 So.2d 9 (Fla. 1974). We have jurisdiction.[1] The First District Court of Appeal by another panel in Tuttle v. Division of Administration, State of Florida Department of Transportation, Fla.App., 327 So.2d 841, (1976), reaffirmed but qualified the decision in City of Jacksonville v. Yerkes, supra. The Tuttle decision is now before this Court upon the asserted contention that it conflicts with the Yerkes decision and a certification of the First District that it passed upon a question of great public interest.
The issue before this Court concerns the latitude an eminent domain jury has in awarding compensation when the only evidence on an element of compensation is the testimony of one expert witness.
The petitioners were the property owners in an eminent domain proceeding below, and challenge the jury's verdict of $9,500 for business damages. Evidence offered by the property owners' expert at trial valued the business damages at $19,500. The property owners assert that the jury was without authority to award them less than the sum of $19,500. The specific facts were well summarized by Judge Walden in his decision for the Fourth District:
"The owners of a hardware store claim business damages because the taking prevented the display of sales merchandise outside the building out in front of the store. The property owner's expert witness testified that in order to cure the lack of display space it would be necessary as a substitute for the store to advertise in some way somewhere to the tune of $100 to $150 per month. More specifically, he testified:
"`A I started an investigation, and what I did is I went to other hardware stores, Singer Hardware, Park Center Hardware, Sewell Hardware, Mower and Engine Repair, Hall Hardware, Ace Hardware, and asked them what they throught (sic) this area in front of their store where they put their merchandise was worth to them.
"`Q Mr. Holden, please don't testify as to what they told you. Now, did you find that they characteristically put items out front of the same nature that we have here?
"`A They use it exactly the same and the first thing any one of these stores did was put their merchandise out in the morning because that to them was their most valuable asset and the best way of displaying their merchandise for sale.

*581 "`Q Based on your investigation did you arrive at an opinion of what this is worth as advertising to a business, this area in front where you display your wares?
"`A On acquiring these facts from these different people, they estimated that to take up the loss, if they lost that area, they would have to advertise $100 to $150 a month some place to regain what they are losing in that advertising space and this was what my investigation showed.

"`So that I decided then I would use the in between figure of $125 a month, which is what a person would pay then for advertisement they had in front of their store.
"`Q In connection with this did you make an examination of Mr. Behm's advertising, did you see some of the bills, what he ordinarily spends for advertising?
"`A I did. I then took the $125 which they would spend per month, multiplied it by 12 and arrived at $1,500 a year, which would be an additional advertising campaign that they would, one would put on, due to the lack of that space he had.

"`Taking that amount for 25 years at 6 per cent, which gave me a figure of 12,783, that's what it would be worth if someone handed it to you today, it gave me $19,175.
"`That $19,175 is estimated business loss due to this loss in advertising space. To show you what I mean, if someone was given $1,500 a year for 25 years they would arrive at $37,500. But you would have to wait the 25 years to get all that money, so this is what we would do to find out what it's worth if it was given to you today.' (Emphasis supplied.)
"In summary, the witness picked the figure of $125 per month, based on what somebody told him, multiplied it by 12 to reach the yearly figure of $1,500. He then multiplied this yearly figure by 25 years to reach a total of $37,500, which he reduced to a present value of $19,175. Thus, the witness in his tenuous equation necessarily relied upon the premise that the building had yet a life of 25 years. It is not shown where or how he obtained this critical ingredient of 25 years to structure his hypothetical workup. But this overlooks other testimony adduced. Furthermore, the witness himself, and properly so, termed the fruit of his calculations as being only an estimate."
The Fourth District Court of Appeal held the verdict was within the proper range for the compensation of business loss. We agree and affirm.
The petitioner property owners contend that the jury was without authority to award them less than the figure testified to by their expert witness since the state failed to present any expert testimony on the element of business loss compensation. This contention is predicated upon their interpretation of this Court's decisions in Meyers v. City of Daytona Beach, 158 Fla. 859, 30 So.2d 354 (1947), and Dade County v. Renedo, 147 So.2d 313 (Fla. 1962). These decisions established a rule of law in condemnation proceedings requiring that "the jury verdict must be not less than the lowest estimates nor more than the highest." Dade County v. Renedo, supra at 316. This rule was necessitated by the uniqueness of condemnation proceedings, and is expressed in instructions to the jury as "your verdict shall not be less than the lowest value testified to by any witness nor shall it be higher than the highest value testified to by any witness." See Florida Eminent Domain Practice and Procedure, Section 8.13, Instruction No. 11 (2d ed. 1970).
The issue before this Court evolves from an interpretation of this rule. The law *582 of this state requires a condemning authority to establish what it believes to be just compensation for the land taken. The condemning authority thus admits damages in this amount, and requires the jury to find that amount as the minimum award. The property owner on the other hand may rebut that evidence and, moreover, may come forward with evidence of additional elements of damages as provided by statute. The maximum total amount of compensation presented in evidence for each element of damage by the property owner establishes the maximum amount of compensation. By the proper application of the rule adversaries admit the value of the property interest taken is neither less nor more than their respective claims. We agree with Judge Walden that the property owners' expert testimony was the maximum amount requested, not a minimum amount admitted. The case of Meyers v. City of Daytona Beach, supra, is an instance where the jury awarded less than the minimum amount admitted by the evidence presented by the condemning authority.
In considering an expert's testimony the jury must be guided by the greater weight of the evidence, and it remains the jury's province to determine the weight and credibility to be given an expert's testimony. Guidelines for this evaluation were established by Mr. Justice Drew in Dade County v. Renedo, supra, where he stated:
"... It then becomes the province of the jury to render its verdict as in other cases upon the evidence that has been produced for its consideration. Knowledge which may be gained by the jury from a view of the property being condemned may be utilized by the jury  not for the purpose of arriving at an independent determination of their own as to value and damages  but for the purpose of assisting them in understanding, interpreting and weighing the evidence which has been produced for their consideration. As in all other cases where the evidence is conflicting, it is within their province to resolve such conflicts but the results reached in such process must be within the evidence and supported by it. Where expert witnesses are produced and testify as to the value and such testimony is not in itself, or in relation to other evidence, properly susceptible of different interpretation as in this case, then the jury verdict must be not less than the lowest estimates nor more than the highest. Otherwise, as pointed out in the Doty case, `the jury's verdict should not be reviewed, even when clearly contrary to the most reasonable and convincing testimony.'" Id. at 316.
The jury in a condemnation proceeding may not make an independent determination of the value of the property. But in evaluating, interpreting, and weighing the credibility of the testimony of an expert witness they may apply to the expert testimony their knowledge and experience, view of the property, as well as other evidence in the case to determine its reasonableness. The opinion of an expert is worth no more than the reasons on which it is based, and if properly susceptible to differing interpretations the jury is at liberty to make such intrepretations. Dade County v. Renedo, supra. See generally Elston v. York, 77 So.2d 856 (Fla. 1955); Wynne v. Adside, 163 So.2d 760 (Fla.1st DCA 1964); Fekany v. State Road Department, 115 So.2d 418 (Fla.2d DCA 1959); Robertson v. Robertson, 106 So.2d 590 (Fla.2d DCA 1958); and Millar v. Tropical Gables Corp., 99 So.2d 589 (Fla. 3d DCA 1958). Compensation in an eminent domain case is by our constitution committed for final determination to the jury, not to an expert.
We reject the reasoning of City of Jacksonville v. Yerkes, supra. Judge Walden stated in his opinion the Yerkes view would,

*583 "... work basic injustices and unduly restrict and bind the fact finding function. As experienced triers know, there are experts with differing degrees of qualifications and subjects who lend themselves in varying degrees to the employment of opinion testimony. Some experts, although able to recite at least enough background and experience to mount the witness stand and give voice to their hypothesis and end opinion, are unworthy of belief, their opinions being against every understanding of common sense and everyday experience. It would be unthinkable to tell a trial court that, faced with this circumstance, it would have no alternative but to adopt as an established fact the opinion of such a witness when the other side failed to counter it with another expert."
We fully agree.
The expert testimony in the instant case has been erroneously characterized by the petitioner as uncontroverted. The record reflects that the testimony was assailed on both cross and recross examination, and the jury's award suggests that this impeachment was to an extent effective. But even if there had been no such cross-examination, we would not reverse the judgment. In the instant case the testimony concerning business loss was in itself susceptible to differing interpretations and the jury was well within its authority to establish the value of losses attributable to business damage to be $9,500. We find no error in that verdict.
We approve the decision of the Fourth District Court of Appeal and discharge the petition for certiorari.
It is so ordered.
ROBERTS, BOYD and ENGLAND, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.