SUNDBERG, Justice,
dissenting.
Petitioner herein presented three points for reversal of the order of the Industrial Relations Commission: Whether the Industrial Relations Commission departed from the essential requirements of the law in (1) upholding the Judge of Industrial Claims’ determination that medical treatment was not fully “furnished” by the employer until payment was made; (2) upholding the Judge of Industrial Claims’ apportionment of eighty percent compensation where the sole doctor testifying as to apportionment recommended exactly the opposite; and (3) upholding the Judge of Industrial Claims’ determination that while maximum medical improvement was reached on September 20, 1972, disability benefits should commence as of November 1, 1973, the date claimant totally stopped work.
I respectfully dissent from denial of the petition for certiorari as to the issue of apportionment of disability between the *765 preexisting condition of arteriosclerosis and the myocardial infarction, which was determined by the Judge of Industrial Claims to be compensable. The record reflects that the Judge of Industrial Claims had the benefit of the testimony of three physicians, Dr. Marshall Pepper, Dr. Roland K. Molinet, and Dr. Henry R. Cooper. A review of the testimony of Drs. Pepper and Molinet reflects that neither offered any opinion within a degree of reasonable medical certainty as to apportionment between the preexisting coronary artery disease and the myocardial infarction. In fact, Dr. Molinet indicated that he was incapable of making any such apportionment. On the other hand, Dr. Cooper testified as follows in response to questions from the Judge of Industrial Claims:
THE JUDGE: Let me understand your testimony that the pre-existing condition, according to your testimony, is seventy-five percent. The condition caused by the myocardial infarction is twenty-five percent?
THE WITNESS: The physical exertion as being regarded as a causal of the symptom relationship would not be more than twenty-five percent. Ordinarily, Judge, except in very rare cases it’s totally due to the arteriosclerotic disease, not as to what he is doing at the moment. But as given to me, this is a rather extreme amount of exertion.
* * * sjc * *
[JUDGE] Q. I see.
Now, we go to the third thing and that’s the degree of disability. We started talking about seventy-five percent and twenty-five percent, and then you said ten percent. Now, is that twenty-five percent of ten percent?
[WITNESS] A. No, sir. What I said is I thought you would be extremely liberal if you said that the precipitation of the infarction was influenced by the environmental events, the exercise, up to twenty-five percent. Certainly seventy-five percent of the reason he had the infarction — or more — may be ninety-nine and nine-tenths percent was due to the underlying coronary artery disease.
So I’m saying if you’re going to make it liberal and you want to go up to twenty-five percent, it’s such an arbitrary thing I couldn’t argue.
Now, the amount of residual disability that he has due to the infarction — and that’s the only thing that I see that you’re talking about — could not be more than ten percent. Now, this is based on how much muscle loss did he lose out of the left ventricle. He did not lose enough to in any way deter his physical activities on the basis of muscle; but maybe he lost ten percent of his total muscle, but his reserve is much greater than that; and plus, the psychological effect possibly of having a heart attack. So it couldn’t be over ten percent.
[JUDGE] Q. Using that spectrum of one hundred percent, how much of the one hundred percent do you chop off for the myocardial infarction?
[WITNESS] A. Ten percent. That’s his disability, his permanent disability as far as I’m concerned, and that is being extremely liberal. . :
Based upon this medical testimony, the Judge of Industrial Claims made a determination that eighty percent of the respondent’s disability was due to the myocardial infarction.
It is undisputed that an order of the Judge of Industrial Claims must be based upon competent substantial evidence. Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla.1974). This is no less true with respect to an order involving apportionment when required under Chapter 440,' Florida Statutes. Tingle v. Dade County Board of County Commissioners, 245 So.2d 76, 77 (Fla.1971). I respectfully submit that there is no competent substantial evidence — evidence based upon reasonable medical certainty — to support the apportionment order of the Judge of Industrial Claims in the instant case. It is conceded that the Judge was not obliged to give credence to the testimony of Dr. Cooper. *766 Nevertheless, if no weight is given to that physician’s testimony, then there is no competent medical testimony in the record to sustain a different percentage of apportionment between the preexisting condition and the compensable condition. While it is true that the finder of fact may select a figure between the highest and the lowest amounts supported by competent evidence, as in the case of condemnation awards,[1] we are not presented with such a situation in the instant case. If Dr. Cooper’s testimony is discarded, then there exists no expert testimony upon which to predicate the apportionment. This is especially clear in the instant case, where one of the other two medical experts testified, essentially, that it was impossible to make an apportionment. Assuming that the Judge did not totally disregard Dr. Cooper’s testimony, there was no independent criteria in the evidence upon which the Judge could base his finding. The case would be different if either Dr. Pepper or Dr. Molinet had testified that none of respondent’s disability resulted from the preexisting condition. If such were the case, the Judge of Industrial Claims would have been supplied with parameters within which to select a percentage between twenty-five percent and one hundred percent as attributable to the com-pensable condition.
I recognize that the task of apportionment required by .Chapter 440, Florida Statutes, is a delicate and imprecise function to be performed by the Judges of Industrial Claims. Nonetheless, their conclusion with respect to apportionment must be supported by some competent medical evidence.
Accordingly, I would grant the petition for certiorari with directions to the Industrial Relations Commission to remand the cause to the Judge of Industrial Claims for further proceedings in connection with the issue of apportionment.
ENGLAND and KARL, JJ., concur.

. Behm v. Division of Administration, State Department of Transportation, 336 So.2d 579 (Fla. 1976).