617 So.2d 1119 (1993)
Marvin COUCH, Appellant,
v.
COMMISSION ON ETHICS, State of Florida, et al., Appellees.
No. 92-2016.
District Court of Appeal of Florida, Fifth District.
May 7, 1993.
*1120 Mathew D. Staver and Jeffery T. Kipi of Staver & Associates, Orlando, for appellant.
Philip C. Claypool and C. Christopher Anderson, III, Tallahassee, for appellee Com'n on Ethics.
Joseph L. Passiatore, Orlando, for appellee Orange County Chairman, Linda Chapin.
DAUKSCH, Judge.
This is an appeal from a final order of the Florida Commission on Ethics ("the Commission") awarding attorney's fees against appellant Marvin Couch ("Couch"). We affirm.
On May 17, 1991, appellant Couch filed a complaint with the Commission on Ethics alleging that appellee Orange County Chairman Linda Chapin ("Chapin"):
... violated Part III, Chapter 112, Florida Statutes by serving on the Orlando/Orange County Expressway Authority and voting to retain the services of an engineering company that employs her son as admitted by Chairman Chapin in Orlando Sentinel dated week of May 6-10th.
On September 18, 1991, the Commission issued a "Public Report and Order Dismissing Complaint." That order states in part:
... . The Commission's review was limited to questions of jurisdiction of the Commission and of the adequacy of the details of the complaint to allege a violation of the Code of Ethics for public officers and employees. No factual investigation preceded the review, and *1121 therefore the Commission's conclusions do not reflect on the accuracy of the allegations of the complaint.
The Commission voted to adopt the legal sufficiency analysis of its executive director a copy of which is attached. Accordingly this complaint is dismissed for failure to constitute a legally sufficient complaint with the issuance of this public report, which shall include the complaint and all documents related to the complaint.
On October 15, 1991, appellee Chapin filed her petition for attorney's fees and costs.
A hearing on the petition was held on February 11, 1992. At the hearing Joseph A. Berenis, Executive Director of the Orlando/Orange County Expressway Authority, testified. Berenis identified documents entitled minutes of the Orlando/Orange County Expressway Authority from December 19, 1990 running through the meeting dated May 22, 1991. Berenis was familiar with Greiner Engineering Co., an engineering consultant firm specializing in transportation that did work for the Expressway Authority. Berenis testified that during the period December 19, 1990 through May 22, 1991, the Expressway Authority never hired Greiner Engineering, nor did it award any contracts to Greiner. Berenis also indicated that the December 19, 1990 minutes indicated Chapin was sworn in as a new member of the Authority on December 19, 1990. Berenis further testified that in a passage of the minutes of the same meeting on presentation of the design for the I-4/Central Connector project, a paragraph states:
Prior to the presentation, Ms. Chapin stated that her son, Andrew Chapin, is employed as project coordinator on the I-4/Central Connector interchange by Greiner Engineering, which is under contract to the Authority. Ms. Chapin provided a letter disclosing this fact. Ms. Chapin also provided a letter from the Orange County Legal Department which states that Ms. Chapin's membership on the Authority could not give rise to any statutory conflict of interest arising from the employment of her son with the firm under contract with the Authority.
Berenis introduced documents indicating that Greiner was contracted with by the Authority August 22, 1990. At that time, the members of the Authority were B.J. West, Robert S. Harrell, Wilbur S. Gary, Tom Barry and Hal Marston. Berenis testified that if someone were to assert that Linda Chapin while serving as a member of the Authority had voted to retain the services of Greiner "that's an incorrect statement."
Appellant Marvin Couch also testified at the hearing. Couch was elected Chairman of the Orange County Republican Executive Committee in February 1991. Couch testified that he filed an ethics complaint against appellee Linda Chapin. Couch identified an Orlando Sentinel article upon which he based his complaint, and was further questioned:
Q. [MR. PASSIATORE]: Can you tell me where in the article Chairman Chapin admitted that she voted to retain an engineering company that employs her son?
A. No. It doesn't. The paragraph that I made that statement from I reckon was on the section where it says conflict from one  from D-1. First paragraph there. And Chapin noted in her letter that she tries to tread very carefully because she sits on the agency proposing to build the road and her son Andrew works for an engineering firm that is designing one of the interchanges.
Q. Is that the paragraph you initially relied upon to file your complaint?
A. Yes it is.
* * * * * *
Q. [MR. PASSIATORE]: Can you tell me where in the article that you have before you Chairman Chapin admitted that she hired Greiner Engineering, who employs her son?
A. It doesn't say that. That's what I implied in my opinion. That's where I made my complaint from.
Couch testified the article was the sole article upon which he relied for his complaint to the Ethics Commission. Couch indicated he had not considered the possibility *1122 that Greiner might have been hired before Chairman Chapin became a member of the Authority. Couch further indicated that at the time the complaint was filed he had no idea as to when Greiner had been hired by the Expressway Authority. Couch in a previous deposition admitted that when he filed his complaint he did not know when Chapin had become a member of the Expressway Authority.
Couch testified that upon reading the article he made up his mind "to file a complaint because there was another complaint earlier and she just seemed like she was getting out of line," so Couch called the Florida Ethics Commission and asked "what a citizen would do if they had a complaint against an elected official," and the Commission faxed him a complaint form. Couch testified he did not confer with anyone else about the filing of the complaint until after the fact nor did he review any public records to verify his allegation. Couch further testified he did not call Chapin to inquire as to whether she had voted to retain Greiner, nor did he call the author of the Sentinel article to confirm whether his interpretation of the article was correct. Couch said he decided to file the complaint because there had been "an article previously that said she had met and broke the Sunshine Law," and he concluded "something has to be done." Couch confirmed that he once said to the Orlando Sentinel "I think she [Chapin] is getting too big for her britches ..." Couch further confirmed that he sent out a press release announcing his filing of the complaint with the Florida Commission on Ethics. But Couch denied writing a press release put out by Advantage Consultants.
Douglas M. Guetzloe, a public relations consultant owning Advantage Consultants, Inc., testified that he had known appellant Couch for about four or five years through Republican Party activities:
Marvin was a contributor and supporter of my campaign when I ran for State Senate, and I have also been a supporter of his candidacy for Chairman of the Party and things of that nature.
Guetzloe testified that a news release dated May 13, 1991 from Advantage Consultants with the heading "Republican Party Files Ethics Complaints Against Chapin/Pignone" was "probably a joint effort" with Couch. Guetzloe testified that he had no independent recollection whether the quotations attributed to Couch in the release were in fact made by Couch. Guetzloe, however, testified that Couch requested his assistance in preparing the press release to announce the filing of the complaint. Guetzloe testified he would not have sent the news release out without Couch's permission. On cross-examination, Guetzloe stated:
Q. [MR. MCCLOUD]: Do you recall whether or not you all discussed any motives for the complaint that he did file?
A. We discussed  I remember we discussed the aspect of as Chairman of the Party is this something that should be done? And I said, absolutely. That's the way I view the role of political parties.
I remember there was discussion about that and there was discussion as to whether or not it was the right thing to do from an individual or political standpoint. I said, absolutely. That's adversarial politics is what it's all about.
Thomas Wilkes, interim Orange County Administrator and former Orange County Attorney testified at the hearing that the Orange County Legal Department determined it would represent appellee Chapin with respect to Couch's complaint because by statute Chapin's duties as County Chairman included service as an ex-officio member of the Orange County Expressway Authority. Wilkes testified that, having drafted the 1988 Orange County Charter, it was his opinion that section 706 of the Charter conferred authority on Orange County to represent its officers when actions such as the instant one were filed against them arising out of an exercise of their responsibilities.
Attorney Harry A. Stewart of Akerman, Senterfitt & Eidson, P.A., who had served as Orange County Attorney for six and *1123 one-half years and had a career total of seventeen years representing local government, was accepted as an expert on Chapter 112, part 3 of the State Ethics Code. Stewart addressed the question whether Couch's complaint contained any factual basis. Stewart was questioned:
Q. [MR. PASSIATORE]: Do you have any further opinion as to whether or not there was a factual basis based on your review of the file?
A. I looked at the newspaper article very closely and compared it to the complaint and attempted to find the allegations in the complaint in the newspaper article so they at least would be within the knowledge of the complainant.
The newspaper article was an article about Chairman Chapin's suggestion that Fran Pignone seek an opinion as to whether or not her personal financial interest in a shopping center, which was in harm's way of the Expressway, was intended to go through, may very well prevent her from voting on some issues.
She indicated that in that article that she had some concern and treaded lightly on issues before the Expressway Authority because her son worked for a company that did business with the Expressway Authority.
I went to the complaint to find those allegations in the  and the complaint said that she voted to hire those people, which she did not. And the newspaper article did not say that she did. And the allegation, as I said, in the complaint was an extrapolation or an extension of information which were assumptions that could not be made from reading the newspaper article.
So I characterize the complaint as baseless if the complainant's sole source on that was information provided by the newspaper article.
Q. Based upon your experience with part III of Chapter 112, and your experience with the Commission on Ethics and your review of the factual background or lack thereof for this complaint, would you categorize this complaint as meeting the statutory or the rule criteria of being frivolous?
A. I believe it does. It clearly is without basis and fact. There is no basis in the newspaper article for the things complained of and clearly falls within that category of baseless claims or frivolous claims for which the statute which provides for attorneys' fees for the prevailing party intends to address.
Stewart further testified that both under common law, statutory and Charter provisions appellee Chapin was entitled to have the Orange County Legal Department undertake her representation in this matter.
The parties filed their proposed recommended orders. On May 11, 1992, the hearing officer filed the recommended order. The order finds that appellant Couch's complaint was frivolous and without basis in law or fact.
The order further finds that while Wilkes concluded Chapin was entitled to representation by his office pursuant to section 706 of the Orange County Code, Chapin herself made no requests for the representation. The order further finds that the evidence failed to prove at the time of the final hearing in the matter that Chapin was liable for or subject to any amount of attorney's fees or costs. The order concludes that it cannot be said that Ms. Chapin "incurred" any attorney's fees or costs "in this matter for which she may be reimbursed." The order therefore recommends that the Commission on Ethics enter a final order dismissing the petition for attorney's fees and costs.
On June 2, 1992, appellee Chapin filed her exceptions to the recommended order. Chapin took exception to finding of fact No. 39, which stated that she had made no request for representation of her by the Orange County Attorney's Office with respect to the ethics complaint filed by Couch. Also, Chapin took exception to the conclusion of law that she was not entitled to an attorney's fee award in the matter. Couch filed no exceptions.
A final hearing was held before the Florida Commission on Ethics on July 17, 1992. Appellee Chapin testified before the Commission:

*1124 The Orange County attorneys expended a total of forty-five hours prior to the time of the Order of Dismissal, and that is the amount of personal liability that I have personally incurred in this case, and that is the amount that I am requesting to be reimbursed by Mr. Couch to my county's general fund at the hourly rate found reasonable by the hearing officer, the total comes to $7,980 ...
Couch stated, "I will agree that I was frivolous in this matter," but denied he intentionally tried to harm Chapin.
On July 22, 1992, the Commission issued its final order awarding attorney's fees. The Commission granted in part appellee Chapin's exception to finding of fact No. 39. The order finds that appellee Chapin was entitled to the attorney's fee award under section 112.317(8), Florida Statutes. The Commission determined that appellant Couch was liable for attorney's fees in the amount of $7,980 to be paid to Orange County, Florida, and this appeal followed.
The Commission's final order adopts the findings of fact set forth in the recommended order, which finds that Couch's actions evidenced a malicious intent to injure appellee Chapin's reputation, and that his complaint was "frivolous and without basis in law or fact." Section 112.317(8), Florida Statutes, provides:
In any case in which the commission [on ethics] determines that a person has filed a complaint against a public officer or employee with malicious intent to injure the reputation of such officer or employee and in which such complaint is found to be frivolous and without basis in law or fact, the complainant shall be liable for costs plus reasonable attorney's fees incurred by the person complained against... .
While appellant Couch argues on appeal his complaint was not frivolous, despite his concession before the Commission that his complaint was indeed frivolous, Couch has waived his right to challenge the recommended order's findings of fact, because Couch did not file exceptions to the hearing officer's findings of fact. Couch cannot argue on appeal matters which were not properly excepted to or challenged before the Commission and thus were not preserved for appellate review. In Florida Dept. of Corrections v. Bradley, 510 So.2d 1122, 1124 (Fla. 1st DCA 1987), the court stated:
[W]e find that in administrative proceedings where a hearing is held before a hearing officer and a recommended order is submitted to the agency for consideration and issuance of a final order, a party which is unwilling to accept the finding of facts made in the recommended order... . must alert the agency to any perceived defects in the hearing procedures or the hearing officer's fact findings. Failure to do so, in cases where the agency accepts the hearing officer's findings of fact, ... . will bar an appellant from presenting a version of the facts different from that recited in the final order, and will preclude any argument on appeal that the agency erred in accepting the facts as set forth in the recommended order.
Couch at no time challenged the hearing officer's findings of fact, and therefore this matter is not preserved for appeal.
In any event, the hearing officer's unchallenged factual findings are based upon competent, substantial evidence. Couch testified in his deposition that the purpose of his complaint was to inform appellee Chapin that "she was getting too big for her britches" and at the hearing confirmed stating the same to the Sentinel. At the hearing, he admitted the Sentinel article upon which he based his complaint did not contain any admission by Chapin that she had voted to retain an engineering company that employs her son, and that he had done no further research on the matter. The recommended order finds:
18. The allegations in the Complaint were based solely upon the information contained in the May 9th Article. In particular, Mr. Couch relied upon the paragraph of the May 9th Article quoted in finding of fact 14.
19. The May 9th Article does not support the allegations contained in the Complaint. The May 9th Article does not *1125 indicate that Ms. Chapin voted to retain Greiner. The May 9th Article suggests just the opposite. It is stated in the article that Ms. Chapin "tries to `tread very carefully' ..." because of her son's work for Greiner.
20. At the time the Complaint was filed, Mr. Couch did not know when Ms. Chapin had become a member of the Authority or when Greiner was retained by the Authority. (Stipulated Fact).
21. Although Mr. Couch was aware generally of when Ms. Chapin was elected to the Orange County Commission, Mr. Couch was unaware at the time he filed the Complaint when Greiner had been retained by the Authority.
22. Mr. Couch made no effort to obtain information to substantiate his Complaint other than the May 9th Article. (Stipulated Fact).
In addition to Couch's own testimony, Douglas Guetzloe testified that Couch requested his assistance in preparing a press release to announce the filing of the complaint, admitting "adversarial politics is what it's all about." Harry Stewart, an expert on ethics, characterized the complaint as "baseless" within the meaning of Chapter 112. The recommended order finds:
F. Mr. Couch's Purpose in Filing the Complaint.

31. Mr. Couch testified that he filed the Complaint against Ms. Chapin because he was a concerned citizen who just wanted the proper authorities to check out Ms. Chapin's actions with regard to Greiner and determine if there were any improprieties. This testimony is not credible.
32. Mr. Couch is the Chairman of the Republican Executive Committee in Orange County. He was elected to that position in February, 1991. Mr. Couch has been a member of the Republican Executive Committee since 1988.
33. As characterized by Mr. Guetzloe, Mr. Couch was playing "adversarial politics". Mr. Couch, a Republican, filed the Complaint and issued the Press Release in an effort to criticize a member of the opposition party, a Democrat. Mr. Couch used the Commission for his political purposes, charging Ms. Chapin had committed a violation of Florida law, when there was no basis for his allegations.
34. Mr. Couch was motivated because of his belief that Ms. Chapin was "getting too big for her britches". He believed that "something had to be done about it."
35. Mr. Couch's actions evidenced a malicious intent to injure the reputation of Ms. Chapin.
36. The Complaint was frivolous and without basis in law or fact.
The hearing officer's findings of fact are certainly supported by competent substantial evidence in the record.
Couch on appeal principally relies on Taunton v. Tapper, 396 So.2d 843 (Fla. 1st DCA 1981) to argue that his complaint cannot be considered frivolous. In Taunton, the court did reverse an attorney's fee awarded by the Commission on Ethics against a claimant on the theory that his complaint was frivolous in law and fact and was filed with malicious intent, but Taunton is factually quite distinguishable. The Commission received a sworn complaint from Taunton alleging that Tapper had violated section 112.313(7)(a), Florida Statutes (1979), by owning and managing a stevedoring company which was directly regulated by the Port St. Joe Port Authority, of which Tapper was the chairman. A preliminary investigation was ordered after the Commission found the complaint to be legally sufficient. Based upon the preliminary investigation, the Commission found that there was no probable cause to believe that Tapper violated section 112.313(7)(a), and dismissed the complaint. Tapper then petitioned for costs and attorney's fees pursuant to section 112.317(8), Florida Statutes. The Commission found that the complaint was maliciously filed and was frivolous, and accordingly entered its order finding Taunton liable for the attorney's fees incurred by Tapper.
Couch glibly ignores the fact that in Taunton, the ethics complaint was sufficient *1126 on its face such that a preliminary investigation was ordered. In the instant case, Couch's complaint was dismissed as legally insufficient to state a possible violation of the Code of Ethics, and the determination was based only upon a facial examination of the complaint without the need for investigation.
Couch seems to argue that because he was deposed and a hearing was held, his complaint cannot be considered frivolous. This argument ignores two critical points. First, the hearing was mandated by Rule 34-5.029 of the Florida Administrative Code, which prescribes the method by which the Commission shall review petitions for attorney's fees and costs. Second, the hearing was held not for the purpose of determining probable cause on the part of appellee Chapin, but, rather, its purpose was to determine whether Couch's complaint was frivolous and without basis in law or fact, and whether the petition was filed with a malicious intent to injure appellee Chapin's reputation.
Couch next argues that appellee Chapin did not actually "incur" attorney's fees within the meaning of section 112.317(8), Florida Statutes, because appellee Chapin had no obligation to pay her attorney anything.
In one portion of the recommended order, the hearing officer concluded:
Construing Section 112.317(8), Florida Statutes, strictly, it must be concluded that it was Orange County and not Ms. Chapin that "incurred" attorney's fees and costs in this case. To "incur" is "[t]o become liable or subject to." Black's Law Dictionary (Fifth Edition, 1979). Ms. Chapin was contingently liable to Orange County for attorney's fees and costs: had she been found to have violated the Ethics Code as alleged by Mr. Couch she would have been required to reimburse Orange County for her representation. This contingency was no longer a possibility at the time of the final hearing. Therefore, it cannot be said that Ms. Chapin "incurred" any attorney's fee or costs in this matter for which she may be reimbursed.
The same justification for imposing an award of attorney's fees in Wright[1] applies in this case: Mr. Couch's allegations against Ms. Chapin were frivolous and maliciously made in an effort to discredit Ms. Chapin. It cannot be ignored, however, that Section 112.317(8), Florida Statutes, unlike the statutory provision dealt with in Wright, specifically requires that the award of fees and costs be limited to amounts "incurred by the person complaint against."
The recommended order, however, did conclude that representation of appellee Chapin by the Orange County Attorney's Office was proper, and that if Chapin had been determined to have violated the law, she would have been required to reimburse Orange County "for the cost incurred by Orange County in defending her." But the hearing officer concluded that because there was no longer a possibility at the time of the attorney fee hearing that appellee Chapin would be required to reimburse Orange County, then there was no entitlement to recovery.
The Commission disagreed with the hearing officer and concluded that
Section 112.317(8) does provide for an award of attorney's fees against a complainant when the respondent was represented by counsel of her public agency, as was [Chapin] and is not limited to situations in which a respondent contracts personally and directly with a private attorney for representation or pays fees from her own pocket.

*1127 The Legislature intended, in enacting Chapter 75-208, Laws of Florida, which is codified at Section 112.317(8), Florida Statutes (the costs and attorney's fee provision at issue here), to punish persons who make malicious and baseless ethics complaints, such as that found by the Hearing Officer and this Commission to have been made by Mr. Couch against Ms. Chapin, and thereby intended to deter similar conduct. The Hearing Officer adheres unduly to what he considers to be the strict language of the provision and focuses on the phrase "incurred by the person complained against" in coming to his conclusion and recommendation that costs and attorney's fees should not be awarded.
The Commission further concluded that
the meaning of the term "incur" encompasses situations such as that of the Respondent, Ms. Chapin, and is not limited to situations where a Respondent directly pays fees from his or her own pocket to an attorney.
The Commission, as created by Article II, Section 8 of the Florida Constitution, is the proper agency to interpret the ethics statutes of Chapter 112, and its interpretations will be accorded judicial deference by this court, so long as they are consistent with legislative intent and supported by competent, substantial evidence. Public Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987 (Fla. 1985). The Commission properly allowed recovery of attorney's fees by Chapin, represented by county attorneys, for the hours expended in obtaining dismissal of Couch's complaint, because the award effectuates the legislative intent of section 112.317(8) to penalize frivolous and malicious Commission complaints.
Couch finally argues that the attorney's fees award was excessive and not "necessary to effectuate the purposes of the statute." This argument is without merit.
The Hearing Officer's order finds that a reasonable hourly rate for the services of attorneys Wilkes and Passiatore is $175 per hour, and that the 22.9 hours invested by Wilkes and 45.5 hours invested by Passiatore were reasonable, for a total award of $11,970. Couch made no objections to these findings below. At the hearing before the Commission, appellee Chapin requested that the amount be reduced to $7,980, cutting off her claim to recover fees for attorney time expended after the September 18, 1991, the date the Commission dismissed the complaint.
Couch argues that the award was "clearly unnecessarily excessive to satisfy the statutory purpose of section 112.317(8)." He seizes upon language from a Federal case, Eastway Const. Corp. v. City of New York, 637 F. Supp. 558, 571 (E.D.N.Y. 1986), to the effect that determining sanctions and fees under Federal Rule of Civil Procedure 11 requires consideration of the cost of the violation to the party seeking sanctions and such mitigating factors as:
(i) whether the [claimant] believed [he] was correct in taking the course [he] did; (ii) whether there was vindictiveness or a desire to punish an opponent; (iii) whether the [claimant] is a neophyte who needs education, a repeat offender, or a person of standing at the bar whose actions have heretofore been ethical and in the high tradition of the bar; (iv) the ability to pay; (v) the need for compensation; (vi) the degree of frivolousness; and (vii) the dangers in chilling the particular kind of litigation involved.
Assuming arguendo these mitigating factors apply, they do not mandate reversal of the fee award here. There can be no question that Couch, an officeholder and active participant in the Orange County Republican Party displayed malice, vindictiveness, or a desire to punish Chapin, a local Democratic office holder. Couch cannot be characterized as a "neophyte," given his party stature and his ability to produce press releases.[2] Finally, the Eastway court's concern of "chilling the particular kind of *1128 litigation involved" cannot be of any concern here, given the hearing officer's findings of malice and frivolousness and the fact that section 112.317(8) has as its very purpose the chilling by way of a penalty of malicious, frivolous complaints such as Mr. Couch's.
Couch has demonstrated no legal or factual basis for any reduction of the fee award.
AFFIRMED.
W. SHARP and DIAMANTIS, JJ., concur.
NOTES
[1] In Wright v. Acierno, 437 So.2d 242 (Fla. 5th DCA 1983), this court held that where it had been determined that an action against city officials was frivolous, an award of attorney fees was required even though the city officials had been represented by a salaried attorney provided by the city. The Wright court noted that in Allen v. Estate of Dutton, 384 So.2d 171 (Fla. 5th DCA 1980), this court held that an award of fees under section 57.105 was proper when the trial court found an action to be frivolous, i.e., so clearly devoid of merit both on the law and the facts as to be completely untenable. Section 57.105 appears to be the statute most analogous to section 112.317(8). Taunton, 396 So.2d at 845, n. 1.
[2] Couch was subsequently elected to the Florida House of Representatives. Journal of the House of Representatives, November 17, 1992.